IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | **Filed Under Seal** |
| v. | ) | |
| | ) | Criminal No. 1:19-MJ-280 |
| SANDY SUSOHO, | ) | |
| | ) | |
| Defendant. | ) | |

FILED JUN 20 2019 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kyle Andreasen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging **SANDY SUSOHO** (**"SUSOHO"**), with knowingly conspiring with CC-1 and other known and unknown co-conspirators to misuse a passport, and to furnish, dispose of, and deliver a passport to another person for use by another than the person for whose use the passport was originally issued and designed, in violation of Title 18, United States Code, Section 371.

2. I am a Special Agent with the United States Department of State's Diplomatic Security Service ("DSS"), assigned to the Washington Field Office and have been so employed since January 2017. While with DSS, my experience as a Special Agent has included, among other things, the investigation of cases involving passport and visa fraud. I have participated in federal investigations which have utilized search and seizure warrants, interviews and interrogations, and the review of visa and passport documents. Due to my training and experience, I am familiar with allegations of criminal activity including, passport and visa fraud, and similar offenses.

3. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with others, including other law enforcement personnel; and my training, experience, and advice received concerning the use of cellphones in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 371 has been committed by **SUSOHO**.

## PROBABLE CAUSE

5. **SUSOHO** is a United States Citizen and a resident of Bronx, New York.

6. On or about August 30, 2018, **SUSOHO** filed a Form DS-11 Application for a U.S. Passport with a private passport and visa service company ("Company-A") in New York City, New York. **SUSOHO** authorized Company-A to act as the courier company for her DS-11. In the DS-11, SUSOHO lists an apartment on 1st Ave. in Manhattan as her mailing address. She further listed Co-Conspirator-1 ("CC-1") as her "Emergency Contact" and provided an address for CC-1 on Jesup Ave. in Bronx, New York. However, SUSOHO made false statements as to both addresses. The actual resident at the listed 1st Ave. address is A.T. and, in an interview with law enforcement, A.T. claimed she did not know **SUSOHO** but admitted to knowing CC-1. Additionally, the Jesup Ave. address **SUSOHO** listed for CC-1 is actually her own mailing address, which is also printed on **SUSOHO's** New York State identification card.

7. In her DS-11 application, **SUSOHO** further claimed she would be traveling to France from on or about September 7 to 14, 2018 in order to obtain the passport on an expedited basis. A representative of Company-A stated that **SUSOHO** requested the company provide proof of travel (a "fictitious itinerary") just for the purpose of expediting her passport.

8. **SUSOHO** also filed a standard form DS-64 (Statement Regarding a Lost or Stolen U.S. Passport Book or Card) stating that her previous U.S. passport had been lost with her handbag on March 22, 2018. **SUSOHO** additionally submitted a standard form DS-71 (Affidavit of Identifying Witness) with CC-1 listed as the identifying witness who would attest to **SUSOHO's** citizenship and true statements provided in her application. CC-1 stated **SUSOHO** was her niece and further listed an address in Georgia as her residential address.

9. On or about August 31, 2018, a U.S. passport #589336543 was issued to **SUSOHO** in her name. As standard operating procedure, the passport book would have been returned to the courier company, Company-A, for distribution to the customer. Based on record checks conducted within databases that maintain border crossings and travel document use, law enforcement could not find any evidence that **SUSOHO** or anyone else actually used this passport to travel to France.

10. During a voluntary interview with law enforcement, **SUSOHO** admitted that CC-1 directed her to obtain the passport and provide false statements concerning the addresses and travel plans. She further stated that CC-1 paid for the passport processing and expediting fees.

11. On or about September 8, 2018, Material Witness-1 arrived at Washington Dulles International Airport in Loudoun County, Virginia, within the Eastern District of Virginia, aboard South African flight 209 from Accra, Ghana. Upon arrival, Material Witness-1 was inspected by a Customs and Border Protection (CBP) Officer conducting primary inspection (hereinafter,

3

"Primary Officer"). Material Witness-1 presented U.S. passport #589336543 bearing the name **SANDY SUSOHO** to the Primary Officer. U.S. passport #589336543 contained a Ghanaian visa that had been issued on September 1, 2018, as well as stamps showing entry to the Republic of Ghana on September 2, 2018 and a departure therefrom on September 7, 2018. However, based on the record checks conducted, law enforcement did not see that U.S. passport #589336543 was presented on an outbound flight from the United States.

12. The Primary Officer used facial recognition software to attempt to verify Material Witness-1's identity, which compared Material Witness-1's live photograph with the photograph stored on the United States passport in the name **SANDY SUSOHO**. The comparison resulted in a photograph "mismatch" message, and Material Witness-1 was subsequently referred to CBP secondary admissibility review.

13. At CBP secondary admissibility review, Material Witness-1 initially claimed to be a United States citizen named **SUSOHO**; however, Material Witness-1 was unable to provide a Social Security Number or any information on her current employment in the United States. Material Witness-1 was asked who the United States passport belonged to, at which point she stated that she did not know and that someone had given it to her. Material Witness-1 was turned over to CBP Enforcement where she told officers that she had paid $1,200.00 to a person named "Junior" a/k/a "Sarpong" for the passport and an airline ticket. Material Witness-1's luggage was inspected by CBP Officers and they discovered a cellular telephone.[1]

14. While Material Witness-1 was in administrative custody, she was interviewed by DSS. In addition to her prior statements, she informed law enforcement that she was coached to

---

[1] On or about November 7, 2018, Material Witness-1 pleaded guilty to violating 8 U.S.C. § 1325(a)(3) in the U.S. District Court for the Eastern District of Virginia. As part of her plea agreement with the Government, Material Witness-1 subsequently consented to the search of her cellular phone.

state she was going to New York. Material Witness-1 further stated she would be visiting her "cousin" later identified as "B.K.." However, based on evidence obtained from Material Witness-1's cell phone, it is apparent that she is in a romantic relationship with B.K.

15. From the review of Material Witness-1's cellular phone, DSS found a deleted message sent on August 31, 2018 to an individual identified as "Musah," stating that "the passport is ready and [she] want[s] to leave on the 7th." DSS further discovered another deleted text message sent on or about September 5, 2018 with an individual named Sanni Jajah in Ghana about obtaining departure details to book a ticket. Call records obtained by subpoena reveal that B.K. also communicated with the telephone number associated with Jajah multiple times in September 2018. Moreover, Sanni Jajah attempted to call Material Witness-1's cellular phone on or about September 7, 2018, the day Material Witness-1 is believed to have departed Ghana.

16. In February 2019, law enforcement interviewed **SUSOHO** who denied knowing anyone named "B.K.." However, a review of **SUSOHO's** telephone records revealed that she communicated with the telephone number associated with B.K. by voice call and/or text message at least 10 times between August 27 – 30, 2018, during the time frame **SUSOHO** submitted the DS-11 passport application. The records did not show any other communication between **SUSOHO** and B.K. between January 2018 and April 19, 2019. Additionally, call records indicate **SUSOHO** and CC-1 were in contact via telephone at least 19 times from August 27 to September 9 of 2018. Call records further establish that CC-1 and Material Witness-1, CC-1 and B.K., and B.K. and Material Witness-1 communicated regularly via cellular phone in August and September 2018.

17. In June 2019, **SUSOHO** provided another voluntary statement to law enforcement further admitting that CC-1 asked **SUSOHO** to "help her with [her] passport" and

to "bring someone here." According to **SUSOHO**, CC-1 told her that the woman from Ghana – later identified as Material Witness-1 – was B.K.'s wife. CC-1 promised **SUSOHO** that she will help her family because **SUSOHO's** father is not working, and **SUSOHO** agreed.

## CONCLUSION

18. Based on the foregoing information, I submit that there is probable cause to believe that in and around August 2018 to on or about September 8, 2018, in the Eastern District of Virginia and elsewhere, **SANDY SUSOHO** knowingly conspired with CC-1 and other known and unknown co-conspirators to misuse a passport, and to furnish, dispose of, and deliver a passport to another person for use by another than the person for whose use the passport was originally issued and designed, in violation of Title 18, United States Code, Section 371.

Respectfully submitted,

Kyle Andreasen
Special Agent
Diplomatic Security Service

Subscribed and sworn to before me on this 20th day of June, 2019:

/s/
John F. Anderson
The Honorable John F. Anderson
United States Magistrate Judge

6